IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CASSANDRA JOHNSON, individually, and, As Representative of the Estate of Decedent TRELYNN D'MAUN WORMLEY; and ARYANNA STAFFORD, As Next Friend of M.P., a Minor,<br><br>*Plaintiffs,*<br><br>v.<br><br>TARRANT COUNTY, TEXAS<br><br>*Defendant.* | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:24-cv-682 |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT,

COMES NOW, Plaintiffs Cassandra Johnson, individually and as representative of the estate of decedent Trelynn D'Maun Wormley ("Decedent" or "Wormley") and Aryanna Stafford, as Next Friend of M.P., a Minor (collectively, "Plaintiffs"), and files this, their Original Complaint, complaining of Defendant Tarrant County, Texas ("Defendant" or "Tarrant County"), and in support hereof would respectfully show the Court as follows:

### I.   SUMMARY OF THE COMPLAINT & FACTUAL ALLEGATIONS

1. The bedrock principle of our criminal justice system is that those accused of crimes are innocent until proven guilty. Likewise, those charged with crimes do not get sentenced or otherwise punished for such unless and until they are proven guilty. However, those same principles do not ring true for the accused in Tarrant County, Texas. Instead, many of those accused

of crimes and placed in the custody of Tarrant County while awaiting trial on the charges lodged against them are given an automatic, pre-verdict sentence—death.

2. This case stems from the tragic death Decedent Trelynn D'Maun Wormley suffered at the hands of Defendant Tarrant County. On July 20, 2022, Mr. Wormley was being held in the Tarrant County Jail while awaiting trial on certain allegations made against him. Because of Defendant's actions and inactions, however, Mr. Wormley never had—nor will he ever have—his day in court. On that day, Mr. Wormley was found unresponsive in his cell and was sent to the emergency room where he was ultimately declared dead. The medical examiner declared that the cause of death was the toxic effects of fentanyl.

3. America's drug problem has only grown deadlier through the widespread manufacturing, distribution, and provision of fentanyl. On almost a daily basis, the media points out different ways that manufacturers and distributors of fentanyl disguise this deadly drug in such a way that many people who take the drug do not realize they have done so until it is too late. Unfortunately, many people in our society are more vulnerable to these bait-and-switch tactics due to their economic, physical, social, spiritual, and emotional circumstances. One particularly vulnerable group are those men and women housed in Texas county jails while they wait for their day in court. These individuals spend most of their time isolated not only from their family and loved ones in the outside world, but also from their fellow detainees. Additionally, many of those detained will often have or develop some type of physical or mental health issues for which they will not receive proper treatment while in custody.[1]

---

[1] *See* NATIONAL JUDICIAL TASK FORCE TO EXAMINE STATE COURTS' RESPONSE TO MENTAL ILLNESS, *State Courts Leading Change*, NATIONAL CENTER FOR STATE COURTS (revised Feb. 2023), https://www.ncsc.org/__data/assets/pdf_file/0031/84469/MHTF_State_Courts_Leading_Change.pdf.

4.     The deadliness of such drugs coupled with detainees' vulnerabilities require that correctional facilities have strict and effective systems in place to prevent drugs and other contraband from making their way inside its walls and into the hands of its detainees. Additionally, because those with mental health issues are more likely to use drugs or develop a substance use disorder,[2] it follows that in order to prevent drug use amongst detainees, correctional facilities must also ensure that they provide adequate mental health care to those they house.

5.     It is clear, however, that Defendant Tarrant County has failed both (1) to implement systems and procedures which effectively prevent drugs from entering its jails and falling into the hands of those it is tasked with protecting, and (2) to adequately treat and protect those with mental health disorders who are more prone to substance use. Tarrant County's failures in these respects have become so widespread such that they have become a pattern and practice of Tarrant County.

6.     Tarrant County's practice of allowing drugs into its correctional facility and failing to properly care for its inmates has had devastating results—the death of those Tarrant County is supposed to protect.

7.     Unfortunately, inmates dying while in Tarrant County's custody is more commonplace than one might think. For example, from 2017 to date, there have been 145 in-custody deaths in Tarrant County. At least 64 of the 145 were, like Mr. Wormley, in the custody of Tarrant County Sheriff's Office specifically.

8.     Several of the deceased had exhibited mental health problems prior to their death and/or their death was drug-related.

---

[2] NATIONAL INSTITUTE ON DRUG ABUSE, *Part 1: The Connection Between Substance Use Disorders and Mental Illness* (Sep. 27, 2022), https://nida.nih.gov/publications/research-reports/common-comorbidities-substance-use-disorders/part-1-connection-between-substance-use-disorders-mental-illness.

9. On November 4, 2017, Billy Freeland died in Tarrant County Jail from acute respiratory and renal failure after detoxing from alcohol.

10. On July 26, 2018, Christopher Lowe was in police custody when he died from "acute cocaine intoxication." The Custodial Death Report stated that he had exhibited mental health problems prior to his death.

11. On January 16, 2019, Jennifer Espinoza died just days after it was discovered she was detoxing off of heroin.

12. On April 5, 2019, Derick Wynn died from "[m]ixed drug intoxication (Methamphetamine and Cocaine) while in the custody of Tarrant County.

13. On April 26, 2020, Dean Stewart was in Tarrant County Jail when he committed suicide inside of his cell.

14. On June 19, 2020, Javonte Myers died in his cell from a seizure after guards failed to check on him. Mr. Myers' intake paperwork indicated, among other things, that he had a seizure disorder, insomnia, schizophrenia, bipolar disorder, and depression.

15. On June 25, 2020, Abdullahi Mohamed died from undetermined causes while in Tarrant County custody after not eating for several days. Records indicate that he was bipolar, manic, and had previously been to a state hospital prior to his incarceration.

16. On December 22, 2020, Jared Chapman committed suicide while in Tarrant County custody. The Custodial Death Report indicates that prior to his death, he had exhibited mental health problems and made suicidal statements.

17. On August 18, 2021, Jeremiah Noble died by suicide while in Tarrant County's custody.

18. On September 10, 2021, Tyler Huffman died while in Tarrant County's custody after he appeared to be detoxing from unknown narcotics. The Custodial Death Report indicates that he exhibited mental health and medical problems prior to his death.

19. On September 14, 2021, Georgia Baldwin died in Tarrant County custody from "severe hypernatremia." Media reports state that she had a mental illness, was found not fit to stand trial, and was supposed to be placed at a state mental hospital. However, wait times required that she be placed at Tarrant County jail in the interim.

20. On February 25, 2022, Edgar Villatoro-Alvarez died from "complications of dehydration" while in Tarrant County's custody. The Custodial Death Report states that he had exhibited mental health problems prior to his death, and media reports state that he had been hospitalized for bipolar disorder just a month prior to being booked into jail and that he exhibited erratic behavior while in custody.

21. On June 17, 2022, Oh Young Park committed suicide while in Tarrant County Jail. His Custodial Death Report notes that he exhibited mental health problems prior to his ddeath.

22. On July 20, 2022, Trelynn D'Maun Wormley was housed at Tarrant County Jail when he died from the "toxic effects of fentanyl." The Custodial Death report stated that he had exhibited mental health problems prior to his death.

23. The tragic deaths described herein represent only a fraction of those that have occurred at the hands of Tarrant County. However, these alone are sufficient to show that Tarrant County has a pattern and practice of disregarding the medical, mental health, and drug-associated issues faced by those it is tasked with protecting.

24. Additionally, given that a number of those who died had drugs in their system at the time of death, it is clear that Tarrant County has a pattern and practice of allowing illegal drugs to make their way into the jail and into the hands of its inmates.

25. Unfortunately, Tarrant County's practice of disregarding its inmates' medical and mental health needs and allowing drugs to run rampant through its correctional facilities did not stop after Mr. Wormley's death.

26. For example, on September 29, 2022, Kenneth Ray Perry died at the Tarrant County Jail. In response to the question of whether Mr. Perry appeared intoxicated from either drugs or alcohol at any time during the incident and/or his entry into the jail, the Custodial Death Report states, "[y]es."

27. On March 20, 2023, Heidiann Gitts died from "mixed drug toxicity (fentanyl, methamphetamine) while in Tarrant County's custody.

28. On March 23, 2023, Jason Jackson died from "toxic effects of methamphetamine" while in Tarrant County Jail.

29. On April 11, 2023, Brandon Zapata was in the custody of the Fort Worth Police Department when he died of "Acute Asthma Exacerbation Complicated by Mechanical Asphyxia and Methamphetamine." The Custodial Death Report stated that he had exhibited mental health problems prior to his death.

30. On June 24, 2023, Adrian Chevez died from what is believed to be suicide. In response to the question of whether Mr. Chevez made any suicidal statements during the incident and/or his entry into jail, the Custodial Death Report states, "[y]es."

31. On June 27, 2023, Jo Ann Lemmons died while in Tarrant County's custody. Her postmortem toxicological analysis revealed that she had benzoylecgonine and promethazine in her blood. Benzoylecgonine is the major metabolite of cocaine.[3]

32. On or about August 2, 2023, Derreal Jackson died while in Tarrant County custody. Media reports suggest that Mr. Jackson may have taken fentanyl some time shortly before being booked and that his cause of death was a fentanyl overdose.

33. On February 9, 2024, Russell Qualls died from "Fentanyl and Trazodone Toxicity" while in Tarrant County Jail.

34. On April 18, 2024, Roderick Johnson died in Tarrant County jail. The Custodial Death Report notes that, "[a] large amount of fentanyl pills were located in his single cell."

35. On April 21, 2024, Anthony Johnson died while in Tarrant County's custody just one day after entering jail. Media outlets reported that Mr. Johnson had a homemade shank and razor in his cell at the time of his death.

36. On May 27, 2024, Chasity Bonner died while in Tarrant County's custody after being found unresponsive in her cell. Although the Custodial Death Report still lists her cause of death as "pending," it has been reported that Ms. Bonner was administered Narcan after being found unresponsive. Narcan is a "medicine that rapidly reverses an opioid overdose."[4]

37. The growing number of in-custody deaths in Tarrant County are not just noticed and felt by the families whose loved ones died. Indeed, Tarrant County's death toll has even caught the attention of numerous media outlets and at least one United States Congressman, Marc Veasey.

---

[3] PUBCHEM, *Compound Summary: Benzoylecgonine*, NATIONAL LIBRARY OF MEDICINE, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, https://pubchem.ncbi.nlm.nih.gov/compound/Benzoylecgonine (last visited July 19, 2024).
[4] *Naloxone DrugFacts*, NATIONAL INSTITUTE ON DRUG ABUSE, ADVANCING ADDICTION SCIENCE (Jan. 2022), https://nida.nih.gov/publications/drugfacts/naloxone.

Congressman Veasey has even called upon the federal government to investigate the "circumstances surrounding the escalating number of unnatural deaths," which he called a "distressing pattern of inmate deaths and jail incidents," and further noted that the "deaths appear to be part of a pattern of negligence and mismanagement from the leadership of Tarrant County Jail."[5]

38. Tarrant County appears to simply turn a blind eye to the issues running rampant in its correctional facilities. Indeed, Tarrant County knew that drug use was an issue in its correctional facilities before Mr. Wormley's untimely death, as it was reported that, "[o]fficers on the scene…did mention that housing unit was known for narcotic use." Additionally, following Mr. Wormley's death, another inmate noted that inmates would "frequently" obtain narcotics and "have narcotics thrown or passed over to their housing unit." Further, shortly after Mr. Wormley's death, Aliyah Lyles was arrested for smuggling drugs into Tarrant County's Green Bay Facility. At the time of her arrest, Lyles was working in the jail as a commissary employee. According to various media outlets' report of her arrest, Lyles told investigators that the drugs she smuggled contained fentanyl.

39. Tarrant County's de facto policy of failing to prevent prohibited items from entering its correctional facilities is further evidenced by the fact that several employees had violated various Civil Service Rules concerning having prohibited items within the secure perimeter of the jail. For example, on September 27, 2019, it was alleged that an officer "failed to search an inmate property bag upon his arrival to the jail," and that it was ultimately discovered that the bag contained prohibited items.

---

[5] Letter from Marc Veasey, Member of Congress, to Kristen Clarke, United States Assistant Attorney General (May 23, 2024), https://veasey.house.gov/sites/evo-subsites/veasey.house.gov/files/evo-media-document/DoJ%20Letter%20Re%20Tarrant%20County%20Jail_Rep.%20Veasey.pdf.

40. On December 2, 2022, it was alleged that an officer brought several prohibited items inside the secure area, including a "pill organizer containing several different pills," some of which medical staff later identified as Acetaminophen containing Codeine (a prescription narcotic), Montelukast, Finasteride, and Metaxalone (a muscle relaxant used to treat muscle pain or injury), all of which are prescription medications. Additionally, several inmates had stated that this same officer had been "passing contraband to inmates."

41. On October 25, 2023, it was reported that an officer "brought unauthorizing cleaning chemicals into the facility," and "gave these chemicals to an inmate."

42. It appears as though the only "effort" (if it can be called that) to prevent prohibited items from entering the correctional facilities come in the form of memos discussing the issues. On September 9, 2013, the Tarrant County Sheriff's Office Confinement Bureau issued a memorandum, the subject of which was "Unauthorized Bags in Secured Perimeter." In the memo, it was stated that "items that could have been used as weapons have also been left inside the jail," and that "an inmate went inside an officer's bag and removed a large number of items, which included…prescription medication." However, the issuance of this memo clearly did little-to-nothing to correct the problem considering there are at least ten (10) incident reports concerning officers bringing prohibited items into Tarrant County's "secure" facilities after the memo was issued.

43. On August 17, 2018, the Tarrant County Sheriff's Office issued another memorandum regarding, "Facility Security / Contraband," which recognized that "the introduction and movement of contraband in the secured facilities" was an issue. Like the September 2013 memo, this did not work either, as there are at least seven (7) incident reports concerning officers bringing prohibited items into Tarrant County's "secure" facilities following the memo's issuance.

The ineffectiveness of such memos is even further evidenced by the fact that on June 16, 2023, Tarrant County Sheriff's Office stated (in yet another memorandum), "[r]ecently, we have observed numerous employees from all entities are entering the jails with unauthorized bags, phones, purses, etc."

44.     Further, Tarrant County was aware that Mr. Wormley had mental health issues and that he was vulnerable to substance use. Indeed, Mr. Wormley's classification interview paperwork notes that he had a serious injury/hospitalization in the past ninety (90) days, and such injury/hospitalization was described as, "overdose." Additionally, on Mr. Wormley's screening form for suicide and medical/mental/developmental impairments, Mr. Wormley answered, "yes," when asked, "Have you ever received services for emotional or mental health problems?" and "Have you been in a hospital for emotional/mental health in the last year?" It was further reported that Mr. Wormley had a history of anxiety and depression and that his most recent psychiatric treatment was only two (2) weeks prior to his arrest.

## II.     PARTIES

45.     Plaintiff Cassandra Johnson is an individual residing in Fort Worth, Texas. Ms. Johnson is the mother and personal representative of the estate of decedent, Trelynn D'Maun Wormley.

46.     Aryanna Stafford is the mother of M.P., who is the biological child of Mr. Wormley. Aryanna Stafford brings these claims as the next friend of M.P., who is a minor. Ms. Stafford and M.P. reside in Tarrant County, Texas.

47.     Defendant Tarrant County is the government entity responsible for the Tarrant County Sheriff's Office, which is in turn responsible for the Tarrant County Jail where Decedent suffered his injuries. Tarrant County is located in the Northern District of Texas and may be served

with process through Tarrant County Judge Tim O'Hare at 100 East Weatherford Street, Suite 501, Fort Worth, Texas 76196.

### III. JURISDICTION AND VENUE

48. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiffs are suing for relief under 42 U.S.C. § 1983. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

49. Venue is proper in the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1391 because Defendant is located in this district and all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

### IV. CAUSES OF ACTION

50. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

**Count One: Violation of the Fourteenth Amendment; 42 U.S.C. § 1983**

51. The Fourteenth Amendment guarantees pre-trail detainees, such as Mr. Wormley, the right to receive adequate medical and mental health care while in Defendant's custody pursuant to the Fourteenth Amendment.

52. As explained further above, Defendant has a widespread pattern and practice of providing inadequate or no medical and mental health care to pre-trial detainees. This de facto policy is evidenced by the rising numbers of suicides and overdoses (whether accidental or otherwise) of inmates who are in Defendant's custody.

53. Defendant's policy described herein is not reasonably related to any legitimate governmental objective.

54. Defendant's practice of providing inadequate mental health care and oftentimes ignoring known mental health issues faced by its inmates has resulted in the serious deprivation of Mr. Wormley's basic human needs and essentially amounts to punishment.

55. Moreover, the Fourteenth Amendment also guarantees pre-trail detainees, such as Mr. Wormley, the right to protection from harm while in Defendant's custody pursuant to the Fourteenth Amendment.

56. However, as demonstrated above, Defendant has a widespread pattern and practice of subjecting its prisoners to harm by allowing deadly drugs to run rampant throughout its correctional facilities. Defendant has failed to put any adequate safeguards in place to ensure that illicit substances do not make their way into its correctional facilities. Such de facto policy is evidenced by (1) the number of custodial deaths that resulted from the toxic effects of illicit substances, (2) the fact that drugs have been found in inmates' cells, (3) the fact that Defendant permitted Aliyah Lyles access to its facilities and its inmates such that she could smuggle in drugs, (4) the fact officers have stated that the "housing unit was known for narcotics use," (5) inmates have stated that they "frequently" obtain narcotics while in Tarrant County's custody, and (6) the various reports regarding prohibited items making their way into the jail.

57. Clearly, Defendant's policy of turning a blind eye to substance use and failing to ensure that drugs stay outside the walls of its correctional facilities has no legitimate governmental objective and amounts to nothing more than punishment. The only thing that such policy has accomplished is ensuring that pre-trial detainees like Mr. Wormley are deprived of their right to be free from harm and the guarantee that they will not be deprived of their life without due process of law.

**Count Two: Violation of the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.021**

58. Defendant had actual notice that Mr. Wormley's death occurred. *See* TEX. CIV. PRAC. & REM. CODE § 101.101(c).

59. Under the Texas Tort Claims Act ("TTCA") governmental units, such as Defendant, are liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2).

60. Defendant failed to provide a correctional facility that is safe and that does not allow drugs to come through its doors and into the hands of its inmates. Defendant's unsecure and unsafe facility and inadequate system for preventing drugs and other prohibit items to enter its correctional facilities constitutes a defect or condition that posed an unreasonable risk of harm to the pre-trial detainees under its care, such as Mr. Wormley.

61. Defendant had actual knowledge of such harm, because it was aware that inmates had died from overdosing on illicit substances. Additionally, Defendant's guards admitted that the "housing unit was known for narcotics use."

62. Nonetheless, Defendant breached its duty to warn Mr. Wormley of such dangers and to make such dangers safe. Defendant's breach(es) proximately caused Mr. Wormley's death.

**Count Three: Wrongful Death; TEX. CIV. PRAC. & REM. CODE § 101.021.**

63. Under the TTCA governmental units, such as Defendant, are liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2).

64. As described above, Mr. Wormley died as a result of Defendant's wrongful conduct that was in violation of the TTCA.

65. Because of Defendant's wrongful conduct, Defendant is liable to Plaintiffs for damages they suffered as a result of Mr. Wormley's untimely death, including but not limited to:

    a. Pecuniary loss in the past and future;

    b. Mental anguish in the past and future;

    c. Loss of consortium;

    d. Loss of inheritance;

    e. Loss of services; and

    f. Funeral and burial expenses.

66. Plaintiffs seek unliquidated damages within the jurisdictional limits of this Court.

## V.  DAMAGES

67. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

68. As a direct and proximate result of Defendant Tarrant County's actions identified above, Plaintiffs have suffered and seek to recover the following damages:

    a. Actual damages;

    b. Punitive damages;

    c. Medical expenses incurred in the past;

    d. Funeral and burial expenses;

    e. Pain and suffering by Trelynn Wormley;

    f. Mental anguish and emotional distress suffered by Trelynn Wormley;

    g. Mental anguish and emotional distress suffered by Plaintiffs;

    h. Lost earning capacity;

    i. Lost care, guidance, love, affection, and/or counsel;

    j. Lost household services;

    k. Lost inheritance;

    l. Lost enjoyment of life;

    m. Loss of consortium;

    n. Past and future loss of companionship and society;

    o. Pre-judgment interest;

    p. Post-judgment interest;

    q. Attorneys' fees;

    r. Expert witness fees; and

    s. Costs of court and litigation expenses.

## VI.   ATTORNEY'S FEES

69. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

70. Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover their attorneys' fees and costs.

## VII.   JURY REQUEST

71. Plaintiffs respectfully request a trial by a jury of her peers on all matters triable to a jury. Plaintiffs will tender the appropriate fee.

## VIII.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant Tarrant County be cited to appear and that judgment be entered against Defendant Tarrant County, for an amount in excess of the jurisdictional limits of this Court, together with pre-judgment and post-

judgment interest at the highest lawful rate, attorney fees, costs of court, and for such other and further relief, both at law and in equity, to which they may be justly entitled.

Respectfully submitted,

**MCCATHERN, PLLC**

*/s/Alizabeth A. Guillot*
Carl L. Evans, Jr.
State Bar No. 24056989
cevans@mccathernlaw.com
Alizabeth A. Guillot
State Bar No. 24138578
aguillot@mccathernlaw.com
Stephen Bergren
State Bar No. 24134428
sbergren@mccathernlaw.com
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219
(214) 741-2662 Telephone

**BEN CRUMP LAW, PLLC**
Paul A. Grinke
State Bar No. 24032255
paul@bencrump.com
Aaron Dekle
State Bar No. 24100961
aaron@bencrump.com
5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 942-0494 Telephone

**COUNSEL FOR PLAINTIFF**