## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **CASSANDRA JOHNSON, individually;** | § | |
| **and ARYANNA STAFFORD,** | § | |
| **As Next Friend of M.P., a Minor, and** | § | |
| **Heir and Representative of the Estate** | § | |
| **of Decedent TRELYNN D'MAUN** | § | |
| **WORMLEY** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:24-CV-00682-O** |
| | § | |
| **TARRANT COUNTY, TEXAS, KEEFE** | § | |
| **COMMISSARY NETWORK L.L.C, and** | § | |
| **KEEFE GROUP, LLC** | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFFS' CONSOLIDATED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT,

COMES NOW, Plaintiffs Cassandra Johnson, individually, and Aryanna Stafford, as Next Friend of M.P., a Minor, and Heir and representative of the estate of decedent Trelynn D'Maun Wormley ("Decedent" or "Wormley") (collectively, "Plaintiffs"), and files this, their Consolidate Complaint, complaining of Defendants Tarrant County, Texas ("Tarrant County"), Keefe Commissary Network, L.L.C. ("KCN"), and Keefe Group, LLC ("Keefe Group", and together with KCN, "Keefe") and in support hereof would respectfully show the Court as follows:

### I.    SUMMARY OF THE COMPLAINT & FACTUAL ALLEGATIONS

1.    The bedrock principle of our criminal justice system is that those accused of crimes are innocent until proven guilty. Likewise, those charged with crimes do not get sentenced or otherwise punished for such unless and until they are proven guilty. However, those same

principles do not ring true for the accused in Tarrant County, Texas. Instead, many of those accused of crimes and placed in the custody of Tarrant County while awaiting trial on the charges lodged against them are given an automatic, pre-verdict sentence—death.

2.      This case stems from the tragic death Decedent Trelynn D'Maun Wormley suffered at the hands of Defendants. On July 20, 2022, Mr. Wormley was being held in the Tarrant County Jail while awaiting trial on certain allegations made against him. Because of Tarrant County's actions and inactions, however, Mr. Wormley never had—nor will he ever have—his day in court. On that day, Mr. Wormley was found unresponsive in his cell and was sent to the emergency room where he was ultimately declared dead. The medical examiner declared that the cause of death was the toxic effects of fentanyl, a drug that should have never been able to make its way to the detainees held under the care and custody of Tarrant County.

3.      America's drug problem has only grown deadlier through the widespread manufacturing, distribution, and provision of fentanyl. On almost a daily basis, the media points out different ways that manufacturers and distributors of fentanyl disguise this deadly drug in such a way that many people who take the drug do not realize they have done so until it is too late. Unfortunately, many people in our society are more vulnerable to these bait-and-switch tactics due to their economic, physical, social, spiritual, and emotional circumstances. One particularly vulnerable group are those men and women housed in Texas county jails while they wait for their day in court. These individuals spend most of their time isolated not only from their family and loved ones in the outside world, but also from their fellow detainees. Additionally, many of those

detained will often have or develop some type of physical or mental health issues for which they will not receive proper treatment while in custody.[1]

4.    The deadliness of such drugs coupled with detainees' vulnerabilities require that correctional facilities have strict and effective systems in place to prevent drugs and other contraband from making their way inside its walls and into the hands of its detainees. Additionally, because those with mental health issues are more likely to use drugs or develop a substance use disorder,[2] it follows that in order to prevent drug use amongst detainees, correctional facilities must also ensure that they provide adequate mental health care to those they house and take precautions to ensure that drugs are not accessible to them.

5.    In addition to the correctional facilities themselves, it is imperative that those contracted to work inside the correctional facilities, such as the Keefe Defendants, act reasonably and competently in hiring, retaining, and supervising their employees who work in the correctional facilities. Keefe markets that it is one of the largest private providers of commissary supplies and services for jails and prisons across the country. It is well known that third party vendors such as Keefe routinely bring in items that are not permitted into a jail. Keefe has the responsibility to ensure that their supervision, hiring, and training of their employees prevents their employees from bringing in these improper items including illicit drugs. When their employees, including Ms. Lyles, transported, distributed and provided these medications and illicit drugs, they were acting in the course and scope of their employment with Keefe which was supposed to supervise, train, and retain them to properly carry out their duties in the Tarrant County Jail. Keefe has exclusive

---

[1] *See* NATIONAL JUDICIAL TASK FORCE TO EXAMINE STATE COURTS' RESPONSE TO MENTAL ILLNESS, *State Courts Leading Change*, NATIONAL CENTER FOR STATE COURTS (revised Feb. 2023), https://www.ncsc.org/__data/assets/pdf_file/0031/84469/MHTF_State_Courts_Leading_Change.pdf.
[2] NATIONAL INSTITUTE ON DRUG ABUSE, *Part 1: The Connection Between Substance Use Disorders and Mental Illness* (Sep. 27, 2022), https://nida.nih.gov/publications/research-reports/common-comorbidities-substance-use-disorders/part-1-connection-between-substance-use-disorders-mental-illness.

control over the items brought into the jail through their commissary and their employees. Ms. Lyles was connected with at least one other detainee who suffered an overdose within the jail but fortunately survived. Mr. Wormley was not as fortunate.

6.      It is clear, however, that Defendant Tarrant County has failed to both (1) implement systems and procedures which effectively prevent drugs from entering its jails and falling into the hands of those it is tasked with protecting, and (2) to adequately protect those with mental health disorders who are more prone to substance use. Tarrant County's failures in these respects have become so widespread that they have become a pattern and practice of Tarrant County.

7.      Likewise, it is clear that the Keefe Defendants were negligent in hiring, retaining, and supervising its employees. Upon information and belief, one or more employees brought the illicit drugs which killed Mr. Wormley into the jail.

8.      Tarrant County's practice of allowing drugs into its correctional facility and failing to properly protect its inmates has had devastating results—the death of those Tarrant County is supposed to protect.

9.      Unfortunately, inmates dying while in Tarrant County's custody is more commonplace than one might think. For example, from 2017 to date, there have been 145 in-custody deaths in Tarrant County. At least 64 of the 145 were, like Mr. Wormley, in the custody of Tarrant County Sheriff's Office specifically.

10.      Several of the deceased had exhibited mental health problems prior to their death and/or their death was drug related.

11.      On November 4, 2017, Billy Freeland died in Tarrant County Jail from acute respiratory and renal failure after detoxing from alcohol.

12.    On July 26, 2018, Christopher Lowe was in police custody when he died from "acute cocaine intoxication." The Custodial Death Report stated that he had exhibited mental health problems prior to his death.

13.    On January 16, 2019, Jennifer Espinoza died just days after it was discovered she was detoxing off of heroin.

14.    On April 5, 2019, Derick Wynn died from "[m]ixed drug intoxication (Methamphetamine and Cocaine) while in the custody of Tarrant County.

15.    On April 26, 2020, Dean Stewart was in Tarrant County Jail when he committed suicide inside of his cell.

16.    On June 19, 2020, Javonte Myers died in his cell from a seizure after guards failed to check on him. Mr. Myers' intake paperwork indicated, among other things, that he had a seizure disorder, insomnia, schizophrenia, bipolar disorder, and depression.

17.    On June 25, 2020, Abdullahi Mohamed died from undetermined causes while in Tarrant County custody after not eating for several days. Records indicate that he was bipolar, manic, and had previously been to a state hospital prior to his incarceration.

18.    On December 22, 2020, Jared Chapman committed suicide while in Tarrant County custody. The Custodial Death Report indicates that prior to his death, he had exhibited mental health problems and made suicidal statements.

19.    On August 18, 2021, Jeremiah Noble died by suicide while in Tarrant County's custody.

20.    On September 10, 2021, Tyler Huffman died while in Tarrant County's custody after he appeared to be detoxing from unknown narcotics. The Custodial Death Report indicates that he exhibited mental health and medical problems prior to his death.

21.     On September 14, 2021, Georgia Baldwin died in Tarrant County custody from "severe hypernatremia." Media reports state that she had a mental illness, was found not fit to stand trial, and was supposed to be placed at a state mental hospital. However, wait times required that she be placed at Tarrant County jail in the interim.

22.     On February 25, 2022, Edgar Villatoro-Alvarez died from "complications of dehydration" while in Tarrant County's custody. The Custodial Death Report states that he had exhibited mental health problems prior to his death, and media reports state that he had been hospitalized for bipolar disorder just a month prior to being booked into jail and that he exhibited erratic behavior while in custody.

23.     On June 17, 2022, Oh Young Park committed suicide while in Tarrant County Jail. His Custodial Death Report notes that he exhibited mental health problems prior to his ddeath.

24.     On July 20, 2022, Trelynn D'Maun Wormley was housed at Tarrant County Jail when he died from the "toxic effects of fentanyl." The Custodial Death report stated that he had exhibited mental health problems prior to his death.

25.     The tragic deaths described herein represent only a fraction of those that have occurred at the hands of Tarrant County. However, these alone are sufficient to show that Tarrant County has a pattern and practice of disregarding the medical, mental health, and drug-associated issues faced by those it is tasked with protecting.

26.     Additionally, given that a number of those who died had drugs in their system at the time of death, it is clear that Tarrant County has a pattern and practice of allowing illegal drugs to make their way into the jail and into the hands of its inmates. Tarrant County turns the blind eye to the drugs entering their system where their officers, employees, and staff smuggle drugs into the jail to prey on the vulnerable detainee population.

27.      Unfortunately, Tarrant County's practice of disregarding its inmates' medical and mental health needs and allowing drugs to run rampant through its correctional facilities did not stop after Mr. Wormley's death.

28.      For example, on September 29, 2022, Kenneth Ray Perry died at the Tarrant County Jail. In response to the question of whether Mr. Perry appeared intoxicated from either drugs or alcohol at any time during the incident and/or his entry into the jail, the Custodial Death Report states, "[y]es."

29.      On March 20, 2023, Heidiann Gitts died from "mixed drug toxicity (fentanyl, methamphetamine)" while in Tarrant County's custody.

30.      On March 23, 2023, Jason Jackson died from "toxic effects of methamphetamine" while in Tarrant County Jail.

31.      On April 11, 2023, Brandon Zapata was in the custody of the Fort Worth Police Department when he died of "Acute Asthma Exacerbation Complicated by Mechanical Asphyxia and Methamphetamine." The Custodial Death Report stated that he had exhibited mental health problems prior to his death.

32.      On June 24, 2023, Adrian Chevez died from what is believed to be suicide. In response to the question of whether Mr. Chevez made any suicidal statements during the incident and/or his entry into jail, the Custodial Death Report states, "[y]es."

33.      On June 27, 2023, Jo Ann Lemmons died while in Tarrant County's custody. Her postmortem toxicological analysis revealed that she had benzoylecgonine and promethazine in her blood. Benzoylecgonine is the major metabolite of cocaine.[3]

---

[3] PUBCHEM, *Compound Summary: Benzoylecgonine*, NATIONAL LIBRARY OF MEDICINE, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, https://pubchem.ncbi.nlm.nih.gov/compound/Benzoylecgonine (last visited July 19, 2024).

34.     On or about August 2, 2023, Derreal Jackson died while in Tarrant County custody. Media reports suggest that Mr. Jackson may have taken fentanyl some time shortly before being booked and that his cause of death was a fentanyl overdose.

35.     On February 9, 2024, Russell Qualls died from "Fentanyl and Trazodone Toxicity" while in Tarrant County Jail.

36.     On April 18, 2024, Roderick Johnson died in Tarrant County jail. The Custodial Death Report notes that, "[a] large amount of fentanyl pills were located in his single cell."

37.     On April 21, 2024, Anthony Johnson died while in Tarrant County's custody just one day after entering jail. Media outlets reported that Mr. Johnson had a homemade shank and razor in his cell at the time of his death.

38.     On May 27, 2024, Chasity Bonner died while in Tarrant County's custody after being found unresponsive in her cell. Although the Custodial Death Report still lists her cause of death as "pending," it has been reported that Ms. Bonner was administered Narcan after being found unresponsive. Narcan is a "medicine that rapidly reverses an opioid overdose."[4]

39.     The growing number of in-custody deaths in Tarrant County are not just noticed and felt by the families whose loved ones died. Indeed, Tarrant County's death toll has even caught the attention of numerous media outlets and at least one United States Congressman, Marc Veasey. Congressman Veasey has even called upon the federal government to investigate the "circumstances surrounding the escalating number of unnatural deaths," which he called a "distressing pattern of inmate deaths and jail incidents," and further noted that the "deaths appear

---

[4] *Naloxone DrugFacts*, NATIONAL INSTITUTE ON DRUG ABUSE, ADVANCING ADDICTION SCIENCE (Jan. 2022), https://nida.nih.gov/publications/drugfacts/naloxone.

to be part of a pattern of negligence and mismanagement from the leadership of Tarrant County Jail."[5]

40.    Tarrant County appears to simply turn a blind eye to the issues running rampant in its correctional facilities. Indeed, Tarrant County knew that drug use was an issue in its correctional facilities before Mr. Wormley's untimely death, as it was reported that, "[o]fficers on the scene…did mention that housing unit was known for narcotic use." Additionally, following Mr. Wormley's death, another inmate noted that inmates would "frequently" obtain narcotics and "have narcotics thrown or passed over to their housing unit." These reports are contained in an investigative report made after Mr. Wormley's death. The investigation to which this report relates to was conducted by the Tarrant County Sheriff's Office, as opposed to being conducted by an independent third-party as required by law. *See* TEX. GOV. CODE § 511.021. Following Tarrant County Sherriff's Office's investigation, it appears that the Fort Worth Police Department "reviewed" the investigation, but still did not conduct one of its own. *See* TEX. GOV. CODE § 511.021 (stating that a law enforcement agency "other than the local law enforcement agency…shall conduct the investigation"). Tarrant County's failure to have an independent investigation of Mr. Wormley's death conducted further illustrates its unwillingness to remedy the problems related to the use of drugs in its correctional facilities and acquiescence with respect to such problems. It has been revealed that Tarrant County has failed to have independent investigations done on a series of deaths which violates the law and exemplifies their indifference to the rights of the detainees and their unwillingness to make any changes or allow their wrongdoing to be discovered.

---

[5] Letter from Marc Veasey, Member of Congress, to Kristen Clarke, United States Assistant Attorney General (May 23, 2024), https://veasey.house.gov/sites/evo-subsites/veasey.house.gov/files/evo-media-document/DoJ%20Letter%20Re%20Tarrant%20County%20Jail_Rep.%20Veasey.pdf.

41.     Further, shortly after Mr. Wormley's death, Aliyah Lyles was arrested for smuggling drugs into Tarrant County's Green Bay Facility. At the time of her arrest, Lyles was working in the jail as a commissary employee. According to various media outlets' report of her arrest, Lyles told investigators that the drugs she smuggled contained fentanyl. Lyles was directly connected by the Sheriff to Mr. Wormley's death and one other detainee who overdosed.

42.     Tarrant County's de facto policy of failing to prevent prohibited items from entering its correctional facilities is further evidenced by the fact that several employees had violated various Civil Service Rules concerning having prohibited items within the secure perimeter of the jail. For example, on September 27, 2019, it was alleged that an officer "failed to search an inmate property bag upon his arrival to the jail," and that it was ultimately discovered that the bag contained prohibited items.

43.     On December 2, 2022, it was alleged that an officer brought several prohibited items inside the secure area, including a "pill organizer containing several different pills," some of which medical staff later identified as Acetaminophen containing Codeine (a prescription narcotic), Montelukast, Finasteride, and Metaxalone (a muscle relaxant used to treat muscle pain or injury), all of which are prescription medications. Additionally, several inmates had stated that this same officer had been "passing contraband to inmates."

44.     On October 25, 2023, it was reported that an officer "brought unauthorizing cleaning chemicals into the facility," and "gave these chemicals to an inmate."

45.     It appears as though the only "effort" (if it can be called that) to prevent prohibited items from entering the correctional facilities comes in the form of memos discussing the issues. On September 9, 2013, the Tarrant County Sheriff's Office Confinement Bureau issued a memorandum, the subject of which was "Unauthorized Bags in Secured Perimeter." In the memo,

it was stated that "items that could have been used as weapons have also been left inside the jail," and that "an inmate went inside an officer's bag and removed a large number of items, which included…prescription medication." However, the issuance of this memo clearly did little-to-nothing to correct the problem considering there are at least ten (10) incident reports concerning officers bringing prohibited items into Tarrant County's "secure" facilities after the memo was issued.

46.    On August 17, 2018, the Tarrant County Sheriff's Office issued another memorandum regarding, "Facility Security / Contraband," which recognized that "the introduction and movement of contraband in the secured facilities" was an issue. Like the September 2013 memo, this did not work either, as there are at least seven (7) incident reports concerning officers bringing prohibited items into Tarrant County's "secure" facilities following the memo's issuance. The ineffectiveness of such memos is even further evidenced by the fact that on June 16, 2023, Tarrant County Sheriff's Office stated (in yet another memorandum), "[r]ecently, we have observed numerous employees from all entities are entering the jails with unauthorized bags, phones, purses, etc."

47.    Further, Tarrant County was aware that Mr. Wormley had mental health issues and that he was vulnerable to substance use. Indeed, Mr. Wormley's classification interview paperwork notes that he had a serious injury/hospitalization in the past ninety (90) days, and such injury/hospitalization was described as, "overdose." Additionally, on Mr. Wormley's screening form for suicide and medical/mental/developmental impairments, Mr. Wormley answered, "yes," when asked, "Have you ever received services for emotional or mental health problems?" and "Have you been in a hospital for emotional/mental health in the last year?" It was further reported that Mr. Wormley had a history of anxiety and depression and that his most recent psychiatric

treatment was only two (2) weeks prior to his arrest. Tarrant County was further aware of the specific medical and mental health issues facing Mr. Wormley from a bullet wound he received years earlier.

48.    It is axiomatic that those tasked with housing detainees, such as Tarrant County, take precautions to prevent drugs from entering its facilities, and that is even more so when they are tasked with housing detainees with mental health issues who may be more prone to substance abuse. As demonstrated above, Tarrant County failed to take such precautions.

49.    Tarrant County is aware of its failures with respect to keeping drugs out of its jail facilities and allowing drugs to fall into inmates' hands. Instead of taking action to correct this problem and avoid its deadly consequences, Tarrant County has done nothing but acquiesce in its own failures.

50.    Upon information and belief, following the death of Mr. Wormley, the Tarrant County Sheriff ordered an investigation be conducted into how drugs are making their way into Tarrant County's correctional facilities. Such investigation was conducted by Criminal Investigation Division ("CID"). It is believed that such investigation was conducted in secret, and not even all of the officials at the correctional facilities were aware it was being conducted.

51.    It is believed that members of the CID informed the sheriff that they were not properly equipped or trained to do this type of investigation as they do not ordinarily handle narcotics-related investigations. However, the sheriff ignored such concerns.

52.    During the investigation, the CID discovered that the presence of narcotics was a significant problem throughout the correctional facilities, and the more CID investigated, the larger the problem seemed to be. CID again informed the sheriff that this problem was bigger than it, and

that it could not handle an investigation of this magnitude with the little resources and training it had, but CID's concerns fell on deaf ears.

53.     CID discovered that one way drugs are initially being brought into the correctional facilities is through the attorney visitation booth and the document port/slip in the booth. The latching mechanism for the door lock on the attorney visitation booth is capable of being manipulated such that detainees are able to access the booth. Such drugs are being passed to neighboring pods through the gymnasium and/or other areas whether there are "blind spots" in security cameras. Jailers are aiding in this process by unlocking the visitation booth, allowing inmates to gather in and around the booths unsupervised, and/or otherwise turning a blind eye to these issues.

54.     At least five (5) officers were suspected to be potentially aiding inmates with the smuggling of drugs into the correctional facility. One of such officers is believed to be Jaquavius Simmons, who was recently named as a defendant in a civil suit related to the death of Anthony Johnson, Jr., a man who died while in Tarrant County's custody. However, Officer Simmons recently resigned from Tarrant County's employ without any disciplinary action.

55.     Another officer was interviewed, and it was discovered that he had made numerous reports concerning drugs in the jail. The officer stated that the reports had been turned over to his supervisor, but that nothing was done in response to such reports.

56.     CID briefed the sheriff on the investigation's findings, but just days later, the sheriff took the CID investigators off of the case and ordered that the case be closed. No arrests or real changes in policies appear to have been made as a result of the investigation.

57.     Upon information and belief, this investigation, although unearthing a multitude of problems within Tarrant County's correctional facilities, led to zero (0) arrests and zero (0)

meaningful changes in Tarrant County's policies. Such inaction amounts to Tarrant County's acceptance and ratification of the policies and practices complained of herein. As such, Tarrant County's policies and practices of allowing drugs to run rampant in its correctional facilities, turning a blind eye to drug use throughout its correctional facilities, and maintaining inadequate procedures to prevent drugs from coming into its facilities and into detainees' hands is not just a de facto policy, but the official policy of Tarrant County.

## II.    PARTIES

58.    Plaintiff Cassandra Johnson is an individual residing in Fort Worth, Texas. Ms. Johnson is the mother and a statutory beneficiary of Decedent, Trelynn D'Maun Wormley.

59.    Aryanna Stafford is the mother of M.P., who is the biological child of Mr. Wormley. Aryanna Stafford brings these claims as the next friend of M.P., who is a minor. Ms. Stafford and M.P. reside in Tarrant County, Texas. M.P., through her next friend Aryanna Stafford, brings claims both individually as a statutory beneficiary, and as the heir and representative of the estate of Decedent. At the time of the filing of the Original Complaints in both the original action against Keefe and in the original action against Tarrant County and at the time of the filing of this Consolidated Complaint, no administration is pending. Administration of Mr. Wormley's estate is not necessary as M.P. is the sole heir of Mr. Wormley, the estate has no debts and no known creditors, and the little personal property of Mr. Wormley is in the possession or control of M.P., Ms. Stafford, or Ms. Johnson and is not in dispute.

60.    Defendant Tarrant County is the government entity responsible for the Tarrant County Sheriff's Office, which is in turn responsible for the Tarrant County Jail where Decedent suffered his injuries. Tarrant County is located in the Northern District of Texas and may be served

with process through Tarrant County Judge Tim O'Hare at 100 East Weatherford Street, Suite 501, Fort Worth, Texas 76196.

61.    Keefe Commissary Network, LLC is a subsidiary company of Defendant Keefe Group, LLC, and is an out of state limited liability company licensed to do business in Texas with its principal Texas office located at 3108 Marquis Rd., Garland, Dallas County, Texas 75042, and may be served with process by serving its registered agent, Cogency Global, Inc. 1601 Elm Street, Suite 4360, Dallas, Dallas County, Texas 75201. Keefe Commissary has already appeared in this case.

62.    Keefe Group, LLC is an out of state limited liability company licensed to do business in Texas with its principal Texas office located at 3108 Marquis Rd., Garland, Dallas County, Texas 75042, and may be served with process by serving its registered agent, Cogency Global, Inc. 1601 Elm Street, Suite 4360, Dallas, Dallas County, Texas 75201. Keefe Group has already appeared in this case.

63.    All Defendants have appeared in this case as the case has been consolidated.

### III.    JURISDICTION AND VENUE

64.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiffs are suing for relief under 42 U.S.C. § 1983. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

65.    Venue is proper in the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1391 because Defendant Tarrant County is located in this district and all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## IV.    <u>CAUSES OF ACTION</u>

66.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

**<u>Count One: Violation of the Fourteenth Amendment; 42 U.S.C. § 1983 (against Defendant Tarrant County)</u>**

67.    The Fourteenth Amendment guarantees pre-trail detainees, such as Mr. Wormley, the right to protection from harm while in Tarrant County's custody and requires that Tarrant County assume responsibility for the safety and well-being of its pre-trial detainees such as Mr. Wormley.

68.    However, as demonstrated above, Tarrant County has a widespread pattern and practice of subjecting its prisoners to harm by allowing deadly drugs to come into and run rampant throughout its correctional facilities. This widespread pattern and practice is not just one of Tarrant County's de facto policies, but also an official policy, as Tarrant County is aware of such pattern and practice but continuously fails to take any corrective action thereby ratifying such practices. Tarrant County has failed to put any adequate safeguards in place to ensure that illicit substances do not make their way into its correctional facilities. Such de facto policy is evidenced by (1) the number of custodial deaths that resulted from the toxic effects of illicit substances, (2) the fact that drugs have been found in inmates' cells, (3) the fact that Tarrant County permitted Aliyah Lyles access to its facilities and its inmates such that she could smuggle in drugs, (4) the fact officers have stated that the "housing unit was known for narcotics use," (5) inmates have stated that they "frequently" obtain narcotics while in Tarrant County's custody, (6) the various reports regarding prohibited items making their way into the jail, (7) the investigation which revealed the magnitude of the issue of drugs in Tarrant County's correctional facilities, and (8) Tarrant County's failure to take any corrective action or make any meaningful changes following such investigation. Each of these policies have been promulgated by the policymaker the Tarrant County Sheriff.

69.     Clearly, Tarrant County's policy of turning a blind eye to substance use and failing to ensure that drugs stay outside the walls of its correctional facilities has no legitimate governmental objective and amounts to nothing more than punishment. The only thing that such policy has accomplished is ensuring that pre-trial detainees like Mr. Wormley are deprived of their right to be free from harm and the guarantee that they will not be deprived of their life without due process of law. Tarrant County's policies complained of herein caused the deprivation of Mr. Wormley's rights, because but for Tarrant County's policies, there would have been no drugs in the jail and thus, Mr. Wormley would not have suffered an untimely death as a result of such drugs.

**Count Two: Violation of the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.021 (against Defendant Tarrant County)**

70.     Tarrant County had actual notice that Mr. Wormley's death occurred. *See* TEX. CIV. PRAC. & REM. CODE § 101.101(c).

71.     Under the Texas Tort Claims Act ("TTCA") governmental units, such as Tarrant County, are liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2).

72.     Tarrant County failed to provide a correctional facility that is safe and that does not allow drugs to come through its doors and into the hands of its inmates. Tarrant County's unsecure and unsafe facility and inadequate system for preventing drugs and other prohibit items to enter its correctional facilities constitutes a defect or condition that posed an unreasonable risk of harm to the pre-trial detainees under its care, such as Mr. Wormley.

73.     Tarrant County had actual knowledge of such harm, because it was aware that inmates had died from overdosing on illicit substances. Additionally, Tarrant County's guards admitted that the "housing unit was known for narcotics use."

74.     Nonetheless, Tarrant County breached its duty to warn Mr. Wormley of such dangers and to make such dangers safe. Tarrant County's breach(es) proximately caused Mr. Wormley's death.

75.     Additionally, Tarrant County is liable to Plaintiffs for violating Texas Health and Safety Code § 481.1191(b). Fentanyl is a synthetic substance that is one of the leading causes of overdose in America. By bringing or permitting the smuggling of fentanyl into Tarrant County Jail, providing it to Mr. Wormley which resulted in his death, and by negligently hiring, retaining, training, and supervising their employees, Tarrant County aided in the distribution and provision of a synthetic substance to Mr. Wormley that proximately caused Plaintiffs' damages and Mr. Wormley's death. Tex. Health & Safety Code Ann. § 481.1191(b).

76.     Tarrant County is jointly and severally liable for the entire amount of damages owed to Plaintiffs under this section and for their negligence as stated above. *Id.* at § 481.1191(d). Additionally, Plaintiffs affirmatively state that Chapter 33 of the Texas Civil Practices and Remedies Code is inapplicable to Plaintiffs' claims. *Id.* at § 481.1191(e)

### Count Three: Wrongful Death; TEX. CIV. PRAC. & REM. CODE § 101.021 (against Defendant Tarrant County)

77.     Under the TTCA governmental units, such as Tarrant County, are liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2).

78.     As described above, Mr. Wormley died as a result of Tarrant County's wrongful conduct that was in violation of the TTCA.

79.     Because of Tarrant County's wrongful conduct, Tarrant County is liable to Plaintiffs for damages they suffered as a result of Mr. Wormley's untimely death, including but not limited to:

      a.     Pecuniary loss in the past and future;

      b.     Mental anguish in the past and future;

      c.     Loss of consortium;

      d.     Loss of inheritance;

      e.     Loss of services; and

      f.     Funeral and burial expenses.

80.     Plaintiffs seek unliquidated damages within the jurisdictional limits of this Court.

**Count Four: Vicarious Liability – Respondeat Superior, Joint Venture, Joint Enterprise, Agency, Partnership, Effective Control (against Keefe Defendants)**

81.     Keefe Defendants' employees, agents, and joint venturers working within the Tarrant County Jail had a duty to exercise ordinary care and act as a reasonably prudent person to avoid harm to others while working in the Tarrant County Jail commissary. These employees, agents, and joint venturers had a duty to exercise ordinary care and act as a reasonably prudent person in their interactions with men and women in the jail including not aiding in bringing into the jail, distributing, or providing any medication or illicit drugs.

82.     Keefe Defendants' employees, agents, and joint venturers working within the Tarrant County Jail also had a duty to exercise ordinary care in the handling and usage of medications and illicit drugs including reporting those to the police and not distributing them. Keefe Defendants' employees, agents, and joint venturers working within the Tarrant County Jail either knew or should have known of the danger those medications and drugs pose to individuals.

83.     Keefe Defendants' employees, agents, and joint venturers working within the Tarrant County Jail owed these duties to Plaintiff.

84.     Keefe Defendants' employees, agents, and joint venturers' actions, including but not limited to the following and, but for various acts and omissions, breached these duties, each of which singularly or in combination, and was a proximate cause of the occurrence in question and Plaintiff's injuries:

> a.      Failing to act as a reasonably prudent person in working in the commissary of the Tarrant County Jail.

> b.      Failing to act as a reasonably prudent person in handling and distributing medications and illicit drugs.

> c.      Failing to follow state laws and regulations; and

> d.      Other negligent acts and omissions to be identified as discovery is conducted.

85.     Keefe Defendants' employees, agents, and joint venturers working within the Tarrant County Jail knew or should have known that these acts and omissions would likely result in injury and death.[6]

86.     These employees, agents, and joint venturers were working within the course and scope of their employment with Keefe when they brought these items into the jail as part of the commissary supplies and supplied them to the detainees or other individuals within the jail as a commissary item. Each of these individuals were directly under the control of Keefe at the time of the incident.

---

[6] The identity of the specific employee or employees responsible will be identified and amended following discovery.

87.    At the time of the incident and at all relevant and material times, Keefe was acting as the employer, principal, partner, joint venturer, or engaged in a joint enterprise with the employees, agents, and/or joint venturers who negligently and recklessly smuggled, handled and distributed medications and illicit drugs into the Tarrant County Jail as part of the commissary supplies and services provided by Keefe. Keefe exercised control and/or had the right to exercise control over these individuals' actions, training, hiring, safety policies and procedures, supervision, and retention. Keefe monitored and/or had the ability to monitor their actions including what they brought into the Tarrant County Jail, and compliance with their policies, procedures, and training that would have prevented the injuries to Plaintiffs. As such Keefe is vicariously liable for these individual's negligence set forth above.

### Count Five: Negligent Hiring, Training, Retention, Supervision, Failure to Control, and Undertaking (against Keefe Defendants)

88.    At all relevant times, Keefe had a legal and assumed duty to act as a reasonably prudent corporation under same or similar circumstances to protect customers and men and women in the Tarrant County Jail, to hire competent and qualified employees, to implement and enforce safety policies and procedures, to train, instruct, monitor, and supervise their employees especially those who work in state or county jails as those individuals are well known to bring medication or drugs into a jail, and to take actions to control their employees. Keefe breached their duties through actions and omissions, including but not limited to:

> a.    Failing to train and instruct their employees, agents, and joint venturers in how to work in jail settings and proper policies, and procedures pertaining to interactions and transactions with men and women in a jail setting;
>
> b.    Failing to supervise their employees, agents, and joint venturers and inspecting their persons prior to them entering the Tarrant County jail or jail facility;

c.     Permitting, encouraging, and approving employee practices of transporting and distributing medications and illicit drugs in a jail setting;

d.     Failing to ensure that their employees working within the Tarrant Count Jail had the requisite knowledge, training, and skill to adequately and safely work in a jail setting;

e.     Failing to ensure that their employees did not have any improper or negligent interactions with residents of the jail;

f.     Promoting negligent business practices that encouraged risky, unsafe, and dangerous actions by their employees;

g.     Negligently undertaking the training, safety, and supervision policies concerning their employees work in jails for Keefe;

h.     Negligent and reckless hiring, qualification, and retention of an unfit, unsafe worker;

i.     Other negligent acts and omissions to be identified as discovery is conducted.

89.     The acts and omissions described above, singularly or in any combination, amount to negligence and/or negligence *per se*, and were a proximate cause of the incident that led to the death of Mr. Wormley and made the basis of this suit and Plaintiffs' injuries and damages.

**Count Six: Violation of Texas Health and Safety Code § 481.1191 (against Keefe Defendants)**

90.     Keefe Defendants are civilly liable to Plaintiffs for violating Texas Health and Safety Code § 481.1191(b). Fentanyl is a synthetic substance that is one of the leading causes of overdose in America. By bringing fentanyl into Tarrant County Jail, providing it to Mr. Wormley which resulted in his death, and by negligently hiring, retaining, training, and supervising their employees, Keefe Defendants aided in the distribution and provision of a synthetic substance to

Mr. Wormley that proximately caused Plaintiffs' damages and Mr. Wormley's death. Tex. Health & Safety Code Ann. § 481.1191(b).

91.     Keefe Defendants are jointly and severally liable for the entire amount of damages owed to Plaintiffs under this section and for their negligence as stated above. *Id.* at § 481.1191(d). Additionally, Plaintiffs affirmatively state that Chapter 33 of the Texas Civil Practices and Remedies Code is inapplicable to Plaintiffs' claims. *Id.* at § 481.1191(e).

**Count Seven: Gross Negligence (against Keefe Defendants)**

92.     Keefe Defendants' acts and/or omissions as set forth above, when viewed objectively at the time of the occurrence, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others. Keefe Defendants acted maliciously and recklessly with blatant disregard to the safety and well-being of Plaintiffs.

93.     Keefe Defendants had actual, subjective awareness of the risks involved, including but not limited to the risk of their employees bringing deadly illicit drugs into a jail facility which are known to cause death, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. These acts and/or omissions described above amount to gross negligence; such gross negligence was a proximate cause of the injuries and damages suffered by Plaintiff. As such, Plaintiffs are entitled to exemplary damages pursuant to Texas Civil Practice & Remedies Code § 41.003, in the amount determined by the trier of fact.

94.     Plaintiffs would further show that the limitations on exemplary damages set forth in Section 41.008 of the Texas Civil Practice & Remedies Code do not apply to these claims.

## V.    DAMAGES

95.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

96.     As a direct and proximate result of Defendants' actions identified above, Plaintiffs have suffered and seek to recover the following damages:

    a.  Actual damages;

    b.  Punitive damages;

    c.  Medical expenses incurred in the past;

    d.  Funeral and burial expenses;

    e.  Pain and suffering by Trelynn Wormley;

    f.  Mental anguish and emotional distress suffered by Trelynn Wormley;

    g.  Mental anguish and emotional distress suffered by Plaintiffs;

    h.  Lost earning capacity;

    i.  Lost care, guidance, love, affection, and/or counsel;

    j.  Lost household services;

    k.  Lost inheritance;

    l.  Lost enjoyment of life;

    m.  Loss of consortium;

    n.  Past and future loss of companionship and society;

    o.  Pre-judgment interest;

    p.  Post-judgment interest;

    q.  Attorneys' fees;

    r.  Expert witness fees; and

    s.  Costs of court and litigation expenses.

## VI.    ATTORNEY'S FEES

97.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

98.    Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover their attorneys' fees and costs.

## VII.    JURY REQUEST

99.      Plaintiffs respectfully request a trial by a jury of her peers on all matters triable to a jury. Plaintiffs will tender the appropriate fee.

## VIII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and that judgment be entered against Defendants, for an amount in excess of the jurisdictional limits of this Court, together with pre-judgment and post-judgment interest at the highest lawful rate, attorney fees, costs of court, and for such other and further relief, both at law and in equity, to which they may be justly entitled.

Respectfully submitted,

**BEN CRUMP LAW, PLLC**

*/s/ Aaron Dekle*
Aaron Dekle
State Bar No. 24100961
aaron@bencrump.com
Paul A. Grinke
State Bar No. 24032255
paul@bencrump.com
5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 942-0494 Telephone

**MCCATHERN, PLLC**

Carl L. Evans, Jr.
State Bar No. 24056989
cevans@mccathernlaw.com
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219
(214) 741-2662 Telephone

**COUNSEL FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2024, a copy of the foregoing document was electronically served on all counsel of record that have appeared in this case using the United States District Court for the Northern District of Texas' electronic filing system.


*/s/ Aaron Dekle*
Aaron Dekle