IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CASSANDRA JOHNSON, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-00682-O |
| | § | |
| TARRANT COUNTY, et al. | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendant Tarrant County's ("Tarrant County") Motion to Dismiss (ECF No. 22), filed December 20, 2024; Plaintiffs' Response to Tarrant County (ECF No. 25), filed January 10, 2025; and Tarrant County's Reply (ECF No. 27), filed January 22, 2025. Additionally, before the Court are Defendants Keefe Commissary Network LLC's and Keefe Group LLC's (collectively "Keefe") Motion to Dismiss (ECF No. 24), filed December 23, 2024; Plaintiffs' Response to Keefe (ECF No. 26), filed January 13, 2025; and Keefe's Reply (ECF No. 28), filed January 24, 2025. The Motions are ripe for the Court's review. After considering the briefing and relevant case law, the Court determines that the Motions to Dismiss should be **GRANTED**.

### I.   BACKGROUND[1]

This suit arises out of an overdose death at the Tarrant County Jail (the "jail"). On July 20, 2022, Trelynn Wormley ("Wormley") overdosed in the jail while awaiting trial. The custodial

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Amended Complaint. *See* Pls.' Amend. Compl., ECF No. 19. At this stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

1

death report stated that Wormley exhibited mental health problems prior to his death, including a previous overdose. After Wormley's death, the Tarrant County Sheriff ordered an investigation into how drugs got into the jail. This led to the arrest of Aliyah Lyles ("Lyles"), a commissary worker. Keefe employed Lyles, who smuggled drugs into the jail and sold them to Wormley.

This investigation also uncovered jail officers' misconduct. Namely, jail officers aided prisoners in smuggling contraband into the jail. Five officers were investigated, but the investigation "led to zero . . . arrests and zero . . . meaningful changes in Tarrant County's policies."[2] Several internal reports indicate that jail officials also disobeyed Tarrant County policies in the past. For instance, in 2019, an officer failed to search a new-arrived inmate's property bag. Next, in 2022, an officer brought contraband into the jail, including a pill organizer that contained various prescription medications. Lastly, in 2023, an officer brought unauthorized cleaning chemicals into the jail and handed them to an inmate.

Multiple deaths occurred in the jail before and after Wormley's death. Twelve deaths occurred in the six years (2017 to 2022) prior to Wormley's death. There were three deaths relating to drug detoxing, four suicides, three deaths from medical issues, and one death due to undetermined causes. Only one overdose death occurred within the jail, and it occurred three years prior to Wormley's death. Eleven deaths occurred at the jail in the three years (2022 to 2024) after Wormley's death. There were five suspected drug overdoses, four confirmed drug overdoses, one suicide, and one death due to undetermined causes.

Plaintiffs brought an action against Defendant Keefe seeking damages and a declaratory judgment under both common-law and statutory negligence.[3] They additionally alleged a violation

---

[2] Pls.' Amend. Compl. ¶57, ECF No. 19.
[3] *See* Pls.' Amend. Compl., ECF No. 19.

of the Texas Health and Safety Code ("THSC").[4] *See* TEX. HEALTH & SAFETY CODE § 481.1191. Keefe removed this action to federal court.[5]

Plaintiffs brought an action against Defendant, Tarrant County, seeking damages and a declaratory judgment under 42 U.S.C. § 1983, the Texas Torts Claims Act ("TTCA"), and the THSC.[6] *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2); TEX. HEALTH & SAFETY CODE § 481.1191(b). The claims against Tarrant County and Keefe were then consolidated.[7] Both Defendants moved to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6).[8] The Motions are ripe for the Court's review.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6)

---

[4] *Id.*

[5] *See* Notice Removal, ECF No. 1, *Johnson v. Keefe Group, LLC*, No. 4:24-CV-00130-O (N.D. Tex. 26 May 2023) (O'Connor, J.).

[6] Plaintiffs explicitly waive their THSC claim against Tarrant County. Pls.' Resp. Tarrant Cnty.'s Mot. Dismiss 12, ECF No. 25. Accordingly, the Court **DISMISSES** Plaintiffs' THSC claim under Count Three of their Amended Complaint.

[7] Order Consolidating Cases, Oct. 25, 2024, ECF No. 15.

[8] Tarrant County additionally moves to dismiss Plaintiffs state claims under Federal Rule of Civil Procedure 12(b)(1). In granting Tarrant County's motion to dismiss under Rule 12(b)(6), the Court declines to extend supplemental jurisdiction over Plaintiffs' state claims. Accordingly, it does not reach Tarrant County's Motion to Dismiss under Rule 12(b)(1).

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

## III. ANALYSIS

There are two Defendants in this case: Tarrant County and Keefe. Tarrant County moves to dismiss Plaintiffs' Amended Complaint on two bases: (1) Plaintiffs fail to plead a condition of confinement claim under § 1983 and (2) the Court lacks subject-matter jurisdiction over Plaintiffs' TTCA and THSC claims.[9] Keefe challenges Plaintiffs' Amended Complaint on three bases: (1) selling drugs is outside its employee course and scope of employment; (2) Plaintiff does not plead

---

[9] Tarrant Cnty.'s Mot. Dismiss, ECF No. 22.

that Keefe could have or should have known that hiring the employee would bear an unreasonable risk of harm; and (3) that fentanyl is a "controlled substance" not a "synthetic" one.[10] The Court addresses the Motions to Dismiss in turn.

### A. Tarrant County's Motion to Dismiss

Plaintiffs bring one federal claim, 42 U.S.C. § 1983, and two state law claims under TTCA and THSC. Tarrant County moved to dismiss Plaintiff's § 1983 under Rule 12(b)(6) for failure to state a claim.[11] Tarrant County also moved to dismiss Plaintiff's State Law claims under Rule 12(b)(1).[12] Because Plaintiff's federal claim is dismissed, the Court does not reach Tarrant County's 12(b)(1) arguments. Rather, the Court declines to exercise supplemental jurisdiction.

   1. <u>Section 1983</u>

Tarrant County challenges Plaintiffs' § 1983 claims on two bases: (1) Plaintiffs fail to establish any *de facto* policy; and (2) even if there was a *de facto* policy, it was not the "moving force" of Wormley's constitutional violation. Plaintiffs respond that they sufficiently pled: (1) Tarrant County had a *de facto* policy of allowing drugs into the jail; (2) Tarrant County had a pattern of failing to protect inmates with medical conditions, mental health concerns, and drug-associated issues; and (3) the conditions were a "moving force" of Wormley's constitutional violation.[13]

The Court holds there is no *de facto* policy regarding Plaintiffs' drug smuggling and failure to protect claims under § 1983. Thus, the Court declines to address Tarrant County's "moving force" argument. Accordingly, Plaintiffs' § 1983 claims are **DISMISSED**.

---

[10] Keefe's Mot. Dismiss 1, 6 n. 12, ECF No. 24.
[11] Tarrant Cnty.'s Mot. Dismiss. 1, ECF No. 22.
[12] *Id.*
[13] Pls.' Resp. Tarrant Cnty.'s Mot. Dismiss 7–10, ECF No. 25.

"Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Goodman v. Harris Cnty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983). "Municipalities can be held liable for violating a person's constitutional rights under § 1983." *Est. of Bonilla ex rel. Bonilla v. Orange Cnty.*, 982 F.3d 298, 308 (5th Cir. 2020) (referencing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

The Fifth Circuit has stated that there is "no meaningful difference" in proving a conditions of confinement case and establishing *Monell* liability. *Bonilla*, 982 F.3d at 308 (quoting *Duvall v. Dall. Cnty.*, 631 F.3d 203, 208 (5th Cir. 2011)). The difference between the two is that *Monell* liability requires a showing of deliberate indifference, while a conditions of confinement claim does not. *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010).

Three elements are necessary to plead an unconstitutional condition of confinement: (1) a rule, restriction, or an identifiable intended condition or practice, or that the jail's official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of the detainee's constitutional rights. *Bonilla*, 982 F.3d at 308–09. A condition can be explicit, such as a rule, policy, or restriction. *Cadena v. El Paso Cty.*, 946 F.3d 717, 727 (5th Cir. 2020). However, "[i]n some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996)).

6

The Fifth Circuit holds that proving "a pattern is a heavy burden, one that has rarely been met in [the] caselaw." *Id.* at 452; *Bonilla*, 982 F.3d at 309; *Sanchez v. Young Cnty.*, 956 F.3d 785, 793 (5th Cir. 2020). "A successful showing of such a pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Benfer v. City of Baytown*, 120 F.4th 1272, 1286 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1313 (2025) (quoting *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 810 (5th Cir. 2017)). "In addition to similarity and specificity, a pattern must be comprised of 'sufficiently numerous prior incidents' rather than merely 'isolated instances.'" *Id.* (quoting *Fuentes v. Nueces Cnty.*, 689 F. App'x 775, 778 (5th Cir. 2017) (per curiam)).

    *a. Tarrant County did not have a de facto policy of allowing drugs into the jail.*

Plaintiffs allege that "Tarrant County has a widespread pattern and practice of subjecting its prisoners to harm by allowing deadly drugs to come into and run rampant throughout its correctional facilities."[14] Plaintiffs argue that this is evidenced by the number of drug-related deaths in the jail, past incidents of officers being found with contraband, the investigation conducted directly after Wormley's death, and Tarrant County's lack of remedial efforts. Tarrant County counters that of the thirteen deaths that occurred at the jail prior to Wormley's death, only five of those incidents were drug related. Plaintiffs did not plausibly plead that Tarrant County had a *de facto* policy of allowing drugs into the jail because they do not offer incidents of the same "similarity and specificity." *Benfer*, 120 F.4th at 1286. As such, this condition of confinement claim is **DISMISSED**.

Plaintiffs must plead numerous similar and specific prior incidents to the alleged condition and violation. *Benfer*, 120 F.4th at 1286. In *Benfer*, the plaintiff sought judgment against the City

---

[14] Pls.' Amend. Compl. ¶68, ECF No. 19.

of Baytown for excessive force with respects to their K-9 units. *Id.* The plaintiffs pled five bite incidents over the course of five years in the hopes of establishing a municipal policy of excessive force. *Id.* The Fifth Circuit noted that the plaintiff's "threadbare complaint notes only the existence of K-9 encounters that resulted in bites. He does not detail the facts surrounding those encounters or make any attempt to show the needed 'similarity and specificity' between events." *Id.* The Fifth Circuit ultimately affirmed the district court's dismissal, holding that five instances over five years "is not enough to meet the heavy burden of showing that Baytown had a custom of allowing officers to use police dogs unconstitutionally." *Id.*

Considering *Benfer*, Plaintiffs' examples reveal themselves to be "threadbare complaints" that offer no insight into the circumstances surrounding the condition or constitutional violation. While Plaintiffs generally allege that jail officers aided inmates with smuggling drugs into the jail, they provide only three specific instances where jail officers smuggled contraband. Plaintiffs also claim that Tarrant County allowed Keefe employees to smuggle drugs, but they provide only one instance of a Keefe employee doing that.

While both situations involve smuggling drugs into the jail, they are not similar enough to illuminate the Court regarding the "similarity and specificity" of these events. *Id.* Plaintiffs directly link Wormley's death to Lyles smuggling drugs into the jail. However, they do not link the misconduct of the jail officers with Lyles' misconduct. Plaintiffs lack instances of sufficient "similarity and specificity" which would suggest that Tarrant County knew commissary employees were smuggling drugs into the jail and did nothing. *Id.* Moreover, three instances of officers smuggling contraband into the jail over five years (2019 to 2023) does not constitute "sufficiently numerous prior incidents" and fails to indicate that Tarrant County allowed the free flow of drugs into the jail. *Id.* Similarly, ten overdose deaths over the span of eight years (2017 to 2024) does

8

not suggest to the Court that there is a severe and pervasive condition of detainees overdosing due to unfettered access to drugs. *Id.*

Plaintiff relies on *Montano v. Orange County* to assert that specific prior instances of the alleged condition of confinement are not needed to establish a *de facto* policy.[15] 842 F.3d 865 (5th Cir. 2016). However, *Montano* is not relevant here. *Montano* was a motion for new trial where the defendant contended that the evidence presented at trial did not uphold the jury verdict. *Id.* at 869. The Fifth Circuit analyzed the weight of the evidence presented and determined "that a given protocol was followed for every similarly-situated detainee." *Id.* at 876. It did not analyze the sufficiency of the pleading. *Id.* Therefore, *Montano* is not applicable in this case, and Plaintiffs were required to plead instances of sufficient "similarity and specificity," but did not. *Benfer*, 120 F.4th at 1286. Accordingly, this claim is **DISMISSED**.

   b. *Tarrant County did not fail to protect detainees.*

Plaintiffs plead that Tarrant County has "a pattern and practice of disregarding the medical, mental health, and drug-associated issues faced by those it is tasked with protecting."[16] Tarrant County responds that Plaintiffs do not allege acts similar to the specific violation Wormley suffered. The Court agrees with Tarrant County. Plaintiffs have not pled similar or specific instances with respects to any of Plaintiffs' failure to protect claims and the Court **DISMISSES** them accordingly.

    i. <u>Tarrant County did not fail to protect detainees with mental health concerns.</u>

Plaintiffs recount six suicides which occurred in the jail. They assert that each of these deaths demonstrate Tarrant County's failure to protect mentally vulnerable detainees because Tarrant County knew these inmates had mental health issues prior to their deaths. But "[s]uicide is

---

[15] Pls.' Resp. Tarrant Cnty.'s Mot. Dismiss 8–9, ECF No. 25.
[16] Pls.' Amend. Compl. ¶25, ECF No. 19.

9

inherently difficult for anyone to predict, particularly in the depressing prison setting." *Bonilla*, 982 F.3d at 306. Moreover, Plaintiffs do not allege that Wormley committed suicide. Accordingly, the Court holds that these deaths are not similar or specific enough to establish a *de facto* policy and **DISMISSES** this claim.

It is not enough to simply allege that people have committed suicide in the custody of Tarrant County. *Bonilla*, 982 F.3d at 310. It is also insufficient to allege that Tarrant County should have better protected these detainees because they disclosed certain mental illnesses. *Id.* While Wormley had documented mental health concerns, suicides do not relate to Wormley's alleged constitutional violation of being exposed to harmful drugs and consequently overdosing on those drugs. *Benfer*, 120 F.4th at 1286. In short, Plaintiffs do not allege that Wormley committed suicide, and the Court does not consider these examples of suicide to be similar or specific enough to relate to Wormley's alleged constitutional violation. *Id.*

Even if Plaintiffs alleged that Wormley committed suicide, there is still no *de facto* policy of disregarding inmates with mental health conditions. In *Bonilla*, the Fifth Circuit held that the defendant's official policy "did not require the [d]efendants to treat [the decedent] as a suicide risk simply because she disclosed certain mental health diagnoses." *Id.* There, the Fifth Circuit looked toward the defendant's suicide prevention policies, the decedent's risk of suicide, and whether the defendant should have been aware that the inmates had a heightened risk of suicide. *Id.* Here, Plaintiffs allege that the previous suicides indicate a pattern of failing to protect mentally ill detainees, and that Tarrant County knew Wormley had mental health issues. However, Plaintiffs do not plead if Wormley was at a heightened risk of committing suicide, nor if Tarrant County had suicide prevention policies in place that its employees failed to follow. Simply alleging that Wormley and other inmates had mental health issues does not establish that Tarrant County failed

to protect them. *Id.* Accordingly, Plaintiffs' failure to protect detainees with mental health conditions claim is **DISMISSED**.

      ii. <u>Tarrant County did not fail to protect detainees from drug-associated issues.</u>

Plaintiffs next contend the various drug-related deaths they plead are sufficient because they are not required to plead "similar and specific" instances in a conditions of confinement case.[17] The Court disagrees. As previously stated, Plaintiffs are required to plead instances of sufficient "similarity and specificity" to establish a *de facto* policy, including in a condition of confinement case. *Benfer*, 120 F.4th at 1286.

Plaintiffs plead that Tarrant County had a pattern of failing to protect inmates with drug-associated issues. Plaintiffs allege this is exhibited by three deaths relating to detoxing over various drugs, five suspected overdoses, and five confirmed overdoses. It is unclear where or how these individual decedents obtained the drugs. The detox deaths suggest that the decedents ingested the drugs before arriving at the jail. The overdose deaths suggest that the decedents ingested the drugs in the jail.

Regardless, the Court is unable to assume the circumstances around these deaths from Plaintiffs' pleadings. Plaintiffs must allege "sufficiently numerous previous incidences" with "similarity and specificity" which would indicate a *de facto* policy. *Id.* These deaths, though drug related, do not individually point to Tarrant County having a *de facto* policy of failing to protect inmates with drug-associated issues. *Id.* These examples lack sufficient details, making them insufficiently similar and specific to Wormley's alleged constitutional condition and violation. *Id.* As such, this unconstitutional condition of confinement claim for failure to protect detainees from drug-associated issues is **DISMISSED**.

---

[17] Pls.' Resp. Tarrant Cnty.'s Mot. Dismiss 8–9, ECF No. 25.

Accordingly, the Court **GRANTS** Tarrant County's Motion to Dismiss. Plaintiffs' 42 U.S.C. § 1983 unconstitutional conditions of confinement claims under Count One of their Complaint are **DISMISSED**.

2. State Law Claims

Having dismissed Count One under § 1983, Plaintiff alleges no other viable federal claim. Therefore, the Court cannot exercise federal question jurisdiction, nor are there grounds for diversity jurisdiction with respect to Defendant Tarrant County. The Court also declines to exercise supplemental jurisdiction over Plaintiffs' TTCA claim. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). As such, Tarrant County's Motion to Dismiss is **GRANTED** as to Plaintiff's TTCA claim in Count Two.

**B. Keefe's Motion to Dismiss**

Keefe raises three bases for dismissal. Namely, (1) selling drugs is outside its employee's course and scope of employment; (2) Plaintiff does not plead that Keefe could have or should have known that hiring Lyles would bear an unreasonable risk of harm; and (3) that fentanyl is a "controlled substance" but not technically a "synthetic" one.[18]  Plaintiffs counter that (1) Keefe is vicariously liable for the torts of its employees because the employees had the general authority to sell items in the jail and used that authority to smuggle and sell drugs; and (2) Keefe knew or should have known that their employees would smuggle drugs because it is a common occurrence

---

[18] Keefe's Mot. Dismiss 1, ECF No. 24.

at other jails.[19] Plaintiffs do not respond to Keefe's third argument.[20] The Court agrees with Keefe. Accordingly, Plaintiffs negligence claims are **DISMISSED**.

    1. <u>Vicarious Liability</u>

Plaintiffs allege that Keefe is vicariously liable for Wormley's death under the theories of *respondeat superior*, agency, joint enterprise, joint venture, partnership, and effective control.[21] Keefe argues that it is not responsible for their employee's intentional tort because selling drugs is not within any of its employees' scope of employment.[22] Plaintiffs rebut, arguing that Keefe employees have the general authority to sell items in the jail, which extends to selling drugs.[23] The Court determines that selling illicit drugs is not within any of Keefe employees' scopes of employment because the employee's work was merely a pretense to sell illicit drugs. Accordingly, Plaintiffs' negligence claims under vicarious liability are **DISMISSED**.

To prove an employer's vicarious liability for a worker's negligence, the plaintiff must show that, at the time of the negligent conduct, the worker (1) was an employee and (2) was acting in the course and scope of his employment. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007). In Texas, "an employee's conduct is considered to fall within the scope of his employment if his actions were '(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee

---

[19] Pls.' Resp. Keefe's Mot. Dismiss 4–7, ECF No. 26.
[20] Keefe challenges Plaintiffs' THSC claim. Keefe's Mot. Dismiss 1 note 10, ECF No. 24. Plaintiffs do not defend it or address it. Pls.' Resp. Keefe's Mot. Dismiss 8–9, ECF No. 26. The Court considers them abandoned as a result. *See Kovac v. Wray*, 363 F. Supp. 3d 721, 747 (N.D. Tex. 2019) ("When a party fails to pursue a claim or defense beyond the party's initial complaint, the claim is deemed abandoned or waived.").
[21] Keefe challenges all of Plaintiffs' vicarious liability claims. Keefe's Mot. Dismiss 3–9, ECF No. 24. Plaintiffs defend their respondeat superior claim, but do not defend their other vicarious liability claims. Pls.' Resp. Keefe's Mot. Dismiss 8–9, ECF No. 26. The Court considers them abandoned as a result. *See Kovac*, 363 F. Supp. 3d at 747 ("When a party fails to pursue a claim or defense beyond the party's initial complaint, the claim is deemed abandoned or waived").
[22] Keefe's Mot. Dismiss 1, ECF No. 24.
[23] Pls.' Resp. Keefe's Mot. Dismiss 4, ECF No. 26.

was employed.'" *Bodin v. Vagshenian,* 462 F.3d 481, 484 (5th Cir. 2006) (quoting *Counts v. Guevara,* 328 F.3d 212, 214 (5th Cir. 2003).

Employers may be liable for intentional torts "committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity." *GTE Sw. Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999). Liability arises from an employee's acts "only if the tortious act falls 'within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired.'" *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018) (quoting *Mayes*, 236 S.W.3d at 757). "If the purpose of serving the master's business actuates the servant to any appreciable extent his acts are within the scope of his employment." *Bodin*, 462 F.3d at 485 (quoting *Howard v. Am. Paper Stock Co.*, 523 S.W.2d 744, 747 (Tex. App.—Fort Worth 1975), *reformed and aff'd,* 528 S.W.2d 576 (Tex. 1975)). If an employee deviates from performing his duties for his own purposes, an employer is not responsible for what occurs during the deviation. *Id.*

In *Doe v. YUM! Brands, Inc.*, the defendant's employee allegedly sexually assaulted the plaintiff while the employee was delivering pizza. 639 S.W.3d 214, 214 (Tex. App.—Houston [1st Dist.] 2021, no pet.). There, the court held that the sexual assault was not in furtherance of the employer's business, nor accomplished an object for which he was employed. *Id.* The court came to this decision because "[t]he delivery of pizza at that point was only a pretense or a means for [employee's] alleged conduct." *Id.*

The Fifth Circuit applies a similar framework. *Bodin*, 462 F.3d at 484–85. In *Bodin*, a psychiatrist sexually assaulted a client during a therapy session. *Id.* The Circuit determined that the district court did not err in concluding that the defendant's sexual assaults: (1) did not further his employer's business, (2) was for his own personal gratification, (3) did not accomplish any

goal for which he was hired, and (4) "was an expression of [the defendant]'s own personal animosity." *Id.* at 485–86. Both cases demonstrate that under Texas law, an employer is not liable when an employee exploits their position to commit an intentional tort for his personal gain or gratification. *Id.*; *YUM! Brands*, 639 S.W.3d at 214.

Though the facts between the preceeding cases and this case vastly differ, the Court employs the same logic. In *YUM! Brands* and *Bodin*, an employee exploited an inherent feature of his job to accomplish his own goal under the guise of work. *Bodin*, 462 F.3d at 485–86; *YUM! Brands*, 639 S.W.3d at 214. Here, Keefe's employee exploited an inherent feature of her job to smuggle drugs into the jail. In *YUM! Brands* and *Bodin*, the employers gained nothing from their employees committing these intentional torts. *Bodin*, 462 F.3d at 485–86; *YUM! Brands*, 639 S.W.3d at 214. Similarly, Plaintiffs do not plead that Keefe benefited from its employee smuggling drugs into the jail. In each of these cases, employees deviated from the objects of their employment to accomplish a crime that benefited only themselves. Accordingly, the Court determines that Keefe employees used their work as a pretense for selling drugs, and this conduct was not within their course and scope of employment. Plaintiffs' common-law negligence claims under vicariously liability and their statutory THSC claims are **DISMISSED**.

2. Direct Liability

Plaintiffs next assert that Keefe is liable for negligent hiring, supervision, retention, failure to control, and undertaking in Count Five of their Complaint.[24] They additionally allege gross negligence in Count Seven of their Complaint.[25] Keefe argues these theories should be dismissed

---

[24] Keefe moves to dismiss all of Plaintiff's direct negligence claims. Keefe's Mot. Dismiss 1, ECF No. 24. Plaintiffs do not address failure to control or undertaking beyond their initial complaint. The Court considers them abandoned as a result. *See Kovac*, 363 F. Supp. 3d at 747 ("When a party fails to pursue a claim or defense beyond the party's initial complaint, the claim is deemed abandoned or waived").

[25] "[G]ross negligence is not an independent cause of action." *Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 529 (W.D. Tex. 2020); *see also Newman v. Tropical Visions, Inc.*, 891 S.W.2d

for two reasons: (1) Plaintiffs did not plead that Keefe knew or should have known its employee posed a substantial risk of harm, and (2) Wormley's ingestion of the drugs was an intervening cause that breaks the chain of causation.[26] The Court agrees Plaintiffs failed to plead that Keefe knew or should have known that its employee posed a substantial risk of harm. In doing so, it declines to address Keefe's causation argument. Accordingly, Plaintiffs' direct liability claims are **DISMISSED**.

To assert direct liability based on a negligence claim, there must be a duty, breach, and damages proximately caused by that breach. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Generally, a person has no legal duty to protect another from the criminal acts of a third person or to control the conduct of another. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). However, when an employer hires an employee, the employer must exercise reasonable care to see that the employee is competent and fit for the job. *YUM! Brands*, 639 S.W.3d at 225. An employer is liable for negligence if it "hires, retains, or supervises an employee whom the employer knows, or by the exercise of reasonable care should have known, is unfit or incompetent, and whose unfitness or incompetence creates an unreasonable risk of harm to others because of the employee's job-related duties." *Id.* at 226 (quoting *Mindi M. v. Flagship Hotel, Ltd.*, 439 S.W.3d 551, 557 (Tex. App.—Houston [14th Dist.] 2014, no pet.)).

For an employer to be liable for negligent hiring, retention, and supervision, an employee must be placed in a situation that creates a foreseeable risk of harm to others given the employment duties. *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240–41 (Tex. 2010) (holding "that neither [the defendant]'s status as an illegal alien or his use of a fake Social Security number to obtain a

---

713, 721 (Tex. App. 1994) ("[T]he determination of gross negligence is relevant only to an assessment of exemplary damages."). Thus, gross negligence must be alleged in the context of a viable negligence claim to be considered by the Court. *Id.*

[26] Keefe's Mot. Dismiss 1, ECF No. 24.

16

commercial driver's license created a foreseeable risk that Rodriguez would negligently drive the gravel truck."); *Houser v. Smith*, 968 S.W.2d 542, 545 (Tex. App.—Austin 1998, no pet.) (holding that an employer is liable when "the employee is placed in a situation that foreseeably creates a peculiar risk of harm to others by reason of the employment duties.").

In *Fifth Club, Inc. v. Ramirez*, an independently contracted security guard violently assaulted a patron of a night club. 196 S.W.3d 788, 796 (Tex. 2006). There, the plaintiff alleged the night club had not conducted a background check on this security guard and therefore, negligently hired him. *Id.* The Texas Supreme Court held that the club was not liable for negligently hiring the security guard because a background check would not have prevented a reasonable employer from hiring him considering that he did not have previous incidents of assault. *Id.* at 796–97.

Here, Plaintiffs fail to plead that any of Keefe's employees posed a foreseeable risk of harm. They do not plead that its employee had previous incidents of smuggling contraband that would have caused a reasonable employer to refrain from hiring her. While Plaintiff alleges that it is "well known that third party vendors such as Keefe routinely bring in items that are not permitted into a jail."[27] However, this general knowledge is not sufficient to establish a case of negligent hiring, retention, or supervision. The knowledge must be about the particular risk of harm that a particular employee creates. *Hughes*, 306 S.W.3d at 240–41; *Houser*, 968 S.W.2d at 545; *Fifth Club*, 196 S.W.3d at 796–97. Ultimately, Plaintiffs fail to plead that Keefe is liable for these negligence claims. Accordingly, the Court determines that Keefe had no reason to know, nor should they have known, the risk of harm its employee created. Plaintiffs' common-law negligence

---

[27] Pls.' Amend. Compl. ¶5, ECF No. 19.

17

claims of negligent hiring, retention, and supervision are **DISMISSED**. Plaintiffs' claim of gross negligence, which relies on a well-pleaded negligence claim, is also **DISMISSED**.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant Tarrant County's Motion to Dismiss Counts One (§ 1983 claim) and Three (THSC claim) of Plaintiffs' Amended Complaint (ECF No. 19). These matters are **DISMISSED with prejudice**. The Court **GRANTS** Defendant Tarrant County's Motion to Dismiss Count Two (TTCA claim) of Plaintiffs' Amended Complaint (ECF No. 19). This matter is **DISMISSED without prejudice**.

The Court additionally **GRANTS** Defendants Keefe's Motion to Dismiss Counts Four (vicarious liability claims), Five (direct negligence claims), Six (THSC claim), and Seven (Gross Negligence) of Plaintiffs' Amended Complaint (ECF No. 19). These matters are **DISMISSED with prejudice**. Final judgment shall follow separately.

**SO ORDERED** on this **11th day** of **July, 2025**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**